UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PAUL STEPHANSKI,

                    Petitioner,                          **DECISION AND ORDER**
                                                         No. 02-CV-0562
          -vs-

SUPERINTENDENT OF UPSTATE
CORRECTIONAL FACILITY,

                    Respondent.
_____

I.      **Introduction**

        Paul Stephanski ("Stephanski" or "Petitioner"), has sought federal habeas review

pursuant to 28 U.S.C. § 2254 of his conviction in Monroe County Court on charges of first

degree rape and first degree sexual abuse. Stephanski's initial Petition for habeas relief was filed

in this Court on August 6, 2002. *See* Docket #1. He filed an Amended Petition on October 28,

2003, *see* Docket #23, and then filed a motion to amend the Amended Petition, *see* Docket #49.

The Court granted Stephanski permission to amend the Amended Petition on December 20,

2004, *see* Docket #56, and ordered respondent to answer the Second Amended Petition (Docket

#52). Since that time, Stephanski has filed numerous motions to amend the second amended

petition, to have his petition stayed, for the appointment of counsel, and for discovery from

respondent. *See generally* Docket #57 *et seq*.

        The somewhat tortuous procedural history of this matter is set forth in more detail in

Docket #89, in which the Court (Foschio, M.J.) denied Stephanski's second motion for a stay

without prejudice to re-file upon an adequate showing pursuant to *Rhines v. Weber*, 544 U.S. 269

(2005).  Specifically, under *Rhines*, there must be good cause for Stephanski's failure to exhaust

the new claims that he wished to add to the second amended petition; the claims must "related

back" to the claims originally pled; and the claims must not be "plainly meritless." *See* Order

Denying Stay (Docket #89). The Court directed Stephanski to provide a "listing of claims that he

intend[ed] to pursue in these proceedings, whether said claims are exhausted and, if so, how and

when they were exhausted, whether said claims are claims that were previously raised in these

proceedings, and whether said claims are new claims that he seeks to exhaust and add to these

proceedings." *See id.*

### A.    Third Motion for a Stay

Stephanski has now returned with his third motion for a stay. *See* Docket ##91-94. In his

"Memorandum of Law to Stay Proceedings" (Docket #93-1), Stephanski requests a stay to

"allow [him] to file a [New York Criminal Procedure Law] 440.10 motion." According to this

memorandum of law, Stephanski wishes to exhaust "two additional claims," which, he alleges,

are not barred by the statute of limitations because they "relate back to ground eight (ineffective

assistance of trial counsel under cumulative effect)." *Id.* Unfortunately, Stephanski does not state

clearly what these two additional claims are, although, several times in this pleading, he states

that he wants to return to state court to exhaust "two claims." On page 1, Stephanski writes that

he "prays to more fully develop the claims of trial counsels [*sic*] critical errors outlined in ground

three of the second amended petition." *Id.* He notes that the "original second amended petition

asserts a ground three with a point one" and that "petitioner seeks to fully develop point two as:

> 'Evidence submitted was insufficient as a matter of law, conviction was against
> the weight of the evidence, defense counsel was ineffective in failing to make
> reasonable objections to the witnesses [*sic*] testimony and courts [*sic*] charge to

the jury, and unreasonable, prejudicial statements made by trial counsel [*sic*] in summation lessened the burden of proof denying petitioner a fair trial in violation of state and federal constitutional rights.'"

*Id.* at 2 (Docket #93-1). The foregoing paragraph does not list one claim; rather, it appears to assert at least claims four claims: (1) the evidence was insufficient; (2) the verdict was against the weight of the evidence; (3) trial counsel was ineffective in failing to object to unspecified witness testimony; (4) and the prosecutor committed misconduct by making comments that shifted the burden of proof to the defense.

Then, on page 3 of the Memorandum of Law, Stephanski begins discussing an issue apparently relating to the prosecutor's obligation to disclose exculpatory or impeachment evidence: he accuses the prosecutor of allegedly "misrepresenting the plea deal given to a defendant." Petitioner's Memorandum of Law to Stay Proceedings at 3 (Docket #93-1). Presumably, this refers to a plea bargain entered into by co-defendant Riccardo Giuliano ("Giuliano") prior to trial.[1] In any event, it appears that this is the second issue that Stephanski wishes to add to the Second Amended Petition. *See id.* ("This also is developed at trial and summation, this relates back to the prosecutorial misconduct claimed, although it is an issue not raised in the second amended petition, only the bolstering, vouching and misconduct are raised in the second amended petition ground four.").

In the "Argument" section of the "Memorandum of Law to Stay Proceedings," Stephanski says that his "request for a stay is to allow a [New York Criminal Procedure Law] 440[.10] motion to be filed in state court to fully exhaust two claims listed in the second

---

[1] Giuliano pled guilty as a principal to one count of first degree rape of the complainant. He received a determinate sentence of five years. Stephanski's first degree rape conviction was based on accessorial liability with respect to Giuliano's actions as a principal.

amended petition, statement of facts at #13." Memorandum at 5 (Docket #93-1). Stephanski does

not indicate the docket number assigned to the pleading to which he refers. According to the

Court's records, the pleading docketed as the Second Amended Petition (Docket #52) does not

list any claims under paragraph 13 of the statement of facts. However, in the Second Amended

Memorandum of Law (Docket #72), there is a "#13" in the Statement of Facts section. In it,

Stephanski states that "petitioner has two major issues that have not been exhausted and that

would reverse the conviction, one is the prosecutorial misconduct misrepresenting the plea of

Giuliano and no evidence to support the charges." Second Amended Memorandum of Law at ii

(Docket #72).

After carefully reviewing Stephanski's Memorandum of Law to Stay Proceedings

(Docket #93-1) and the Second Amended Memorandum of Law (Docket #72), the Court believes

that Stephanski is attempting to add an ineffective assistance of counsel claim based on the

failure to object to unspecified witness testimony, a claim of prosecutorial misconduct during

summation, a claim regarding prosecutor's disclosure of Giuliano's plea bargain; a claim that the

evidence was insufficient, and a claim that the verdict was against the weight of the evidence.

### B.  Standard Under *Rhines v. Weber*

Recently, the Supreme Court held that, in keeping with the purposes of AEDPA's[2]

amendments to the habeas corpus statute, a petitioner's request for "stay and abeyance should be

available only in limited circumstances." *Rhines v. Weber*, 544 U.S. 269, *supra*. Stays should be

granted only "if the petitioner had good cause for his failure to exhaust, his unexhausted claims

are potentially meritorious, and there is no indication that the petitioner engaged in intentionally

---

[2] Antiterrorism and Effective Death Penalty Act, Pub. Law No. 104-132, 110 Stat. 1214.

dilatory litigation tactics." *Id.* Neither the Supreme Court nor the Second Circuit has yet defined

the contours of "good cause" in the context of stay and abeyance. District courts in this Circuit

have varied in their interpretations of the standard for "good cause." *Wallace v. Artus*, No. 05

CIV. 0567 SHS/JCF, 2006 WL 738154, *4 (S.D.N.Y. Mar. 23, 2006) (citing *Fernandez v. Artuz*,

No. 00 Civ. 7601, 2006 WL 121943, at *5 (S.D.N.Y. Jan. 18, 2006) (collecting cases); *Pace v.

DiGuglielmo*, 544 U.S. 408, 125 S. Ct. 1807, 1813 (2005) (stating that "filing a 'protective'

petition in federal court and asking the federal court to stay and abey the federal habeas

proceedings until state remedies are exhausted . . . [as a method of coping with] reasonable

confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for

him to file in federal court")).

Here, Stephanski asserts that the "good cause" for his failure to exhaust his claims in

state court is that he "is a layman, has no legal training, a limited education with poor

comprehension skills, and limited access to legal materials or persons trained to provide

adequate legal assistance."  When federal courts have considered affirmative defenses in the

habeas context, such as the statute of limitations, exhaustion of state remedies, procedural

default, and non-retroactivity, they have found that a petitioner's ignorance of the law does not

justify excusing his failure to comply with the rules governing habeas petitions. For instance, in

the context of procedural default, a petitioner's allegation that he *pro se* and inexpert in the law

does not provide sufficient "cause" to excuse the failure to raise a claim in the proper state court

tribunal. *Graham v. Leonardo*, 166 F.3d 1200, 1998 WL 852942, at *2 (2d Cir. 2000)

("[I]ignorance does not constitute good cause excusing procedural default in these kinds of

circumstances.") (unpublished opinion) (citing *Washington v. James*, 996 F.2d 1442, 1447 (2d

Cir. 1993). *See also Plowden v. Romine*, 78 F. Supp.2d 115, 120 (E.D.N.Y. 1999) ("There is no limiting principle to [petitioner's] argument that simple ignorance—absent any showing of diligence on his part or allegations of impediments to his staying informed about this case—should provide a basis for equitable tolling; to hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely.").

Even assuming that Stephanski could demonstrate "good cause," which this Court expressly finds he is unable to do, the Court would deny the request for a stay on other grounds. The first reason relates to futility: Most, if not all of the  claims Stephanski wishes to add, would be procedurally defaulted if Stephanski were to attempt to raise them in state court by means of a motion pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. In particular, the following claims are procedurally barred: (1) insufficiency of the evidence; (2) the verdict was against the weight of the evidence; (3) the prosecutor committed misconduct by making comments that shifted the burden of proof to the defense; and (4) the prosecutor "misrepresented" the terms of the plea bargain entered into by co-defendant Giuliano. This is because sufficient facts appeared on the record to have allowed them to be raised on direct appeal, and the motion court would deny these claims on that basis. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). In addition, Stephanski's ineffective assistance of trial counsel claim, which relates to counsel's alleged failure to object to certain unspecified witness testimony, also would be procedurally barred. Although trial counsel cannot be expected to argue on appeal that he was ineffective, here Stephanski had different appellate counsel on direct appeal, and she did, in fact, assert that trial counsel was ineffective on several grounds. Again, because the ineffectiveness claims that Stephanski wishes to add is based on facts contained in the trial transcript, and

because Stephanski had different counsel on appeal, the claim could have been raised on direct

appeal. Thus, if he were to raise this ineffective assistance of trial counsel claim in a C.P.L. §

440.10 motion, it would be denied pursuant to C.P.L. § 440.10(2)(c). *See Reyes v. Keane*, 118

F.3d 136, (2d Cir. 1997) (stating that denial of a C.P.L. § 440.10 motion, pursuant to §

440.10(2)(c), will not always be appropriate in the ineffective assistance context but holding that

petitioner's claim was deemed exhausted and procedurally defaulted because it did not fall

within any of the exceptions noted by the New York courts) (citing *People v. Harris,* 109 A.D.2d

351, 491 N.Y.S.2d 678, 687 (App. Div. 2d Dept. 1985) (trial record insufficient to resolve

ineffective assistance claim), *appeal denied*, 66 N.Y.2d 919, 498 N.Y.S.2d 1034, 489 N.E.2d

779 (N.Y. 1985); *see also Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003) (holding that

petitioner's ineffective assistance of trial counsel claim was procedurally barred where the claim

was "particularly well-established in the trial record" since it was based on the fact that trial

counsel "plainly failed to object on inconsistency grounds to charging the counts in the

conjunctive"); *Aparicio v. Artuz,* 269 F.3d 78, 91 (2d Cir. 2001) (petitioner claimed ineffective

assistance of trial counsel based on failure to object on double jeopardy grounds; C.P.L. §

440.10(2)(c) barred such a collateral attack where petitioner unjustifiably failed to raise the

ineffective assistance issue on direct appeal).

For all of these reasons, then, a stay is patently inappropriate,[3] and Stephanski's third

request for a stay is denied. Accordingly, the Court will proceed to consider Stephanski's request

for habeas relief based on the claims asserted in the Second Amended Petition (Docket #52). For

---

[3] Because the Court has denied the request for a stay based on Stephanski's failure to satisfy the *Rhines* criteria, there is no need for the Court to consider respondent's claim, raised for the first time in its response to Stephanski's third motion for a stay, that Stephanski's proposed claims are untimely and do not relate back to the initial petition.

the reasons set forth below, the petition is denied.

## III.   Analysis of Second Amended Petition

### A.   Factual Background Concerning Petitioner's Underlying Conviction

The conviction here at issue stems from Stephanski's participation in the gang rape and aggravated sexual assault of a young woman, Jill Dickenson ("Dickenson"), who had lost consciousness after consuming alcohol and several hits of the drug MDMA ("Ecstasy"). Stephanski's co-perpetrators in the assault were Giuliano and Michael Puff ("Puff"). Stephanski was indicted on two counts of first degree rape (as a principal) and two counts of first degree sexual abuse (as a principal). He was also indicted on one count of first degree rape and one count of first degree sexual abuse as the accomplice of Giuliano. Giuliano pleaded guilty prior to trial to one count of first degree rape; Stephanski and Puff were tried jointly in Monroe County Court (Geraci, J.).

The prosecution presented proof at trial that the attack on Dickenson occurred in the early morning hours of October 21, 1998, at the apartment of Jennifer Savage ("Savage"), a friend of the complainant's. Dickenson had gone to Savage's apartment with the understanding that she, Savage, John DeFazio ("DeFazio") (Savage's boyfriend), and Puff, were going to do the drug Ecstasy. T.600.[4] Stephanski, who previously was unknown to the complainant, arrived at the gathering unexpectedly. He had invited Giuliano, who in turn had invited his friend, Eric Sullivan ("Sullivan"). T.601-03, 637. During the course of the evening, everyone at the party consumed beer; all except Sullivan consumed Ecstasy in both a liquid and pill form. T.491, 610, 627, 633, 660. Dickenson related that Stephanski made numerous lewd and suggestive comments

---

[4]  Citations to "T.__" refer to the trial transcript.

to her which caused her to feel uncomfortable.

As the evening wore on, the effects of the Ecstasy and the alcohol caused Savage, DeFazio and Dickenson to lose consciousness. Once Dickenson had passed out, Puff and Sullivan carried her into a spare bedroom and placed her on the bed, fully clothed. Shortly thereafter, Stephanski, Giuliano, Puff and Sullivan went into the spare bedroom with the intention of seeing "some breasts." Stephanski and Puff stripped Dickenson of her clothes. Puff asked "if the [other] guys wanted to go rounds?" T.663-64, 766-67. According to the testimony of Sullivan and Giuliano, Stephanski "jumped on" the complainant and raped her twice while she remained unconscious. T.664, 767. Giuliano testified that he told Stephanski to stop, but Stephanski ignored him and continued to assault Dickenson. T.764, 768. Giuliano admitted that he ultimately also raped Dickenson. Puff then penetrated her vagina with a beer bottle and a vacuum cleaner. T.666-68, 767-70.

DeFazio was awakened by Puff, who bragged that "the Puffer ha[d] something to show [him]." T.492. After being led to the spare bedroom, DeFazio discovered the complainant sprawled out on the bed, still unconscious and naked from the waist down. DeFazio also observed a vacuum cleaner, the handle of which was upright against the complainant's vagina. T.492-93. DeFazio then immediately ordered everyone to leave the apartment. T.586. Stephanski, Puff, and Sullivan all departed in a car driven by Giuliano. During the drive, Stephanski and Puff concocted a lie to tell the police in the event that they were questioned about the attack on Dickenson. Stephanski determined that they would "blame the victim" and claim that she had been sexually aggressive and had wanted to have intercourse with Giuliano. T.669-70, 772.

Several hours after the co-defendants and Sullivan had left the apartment, Dickenson woke up and told Savage and DeFazio that she thought she had been raped. Savage took Dickenson to the hospital, and a rape kit was secured as evidence. Subsequent laboratory analysis revealed the presence of sperm in Dickenson's vagina, which was in keeping with Giuliano's testimony that the condom he was using broke while he was raping the complainant.

A police investigation ensued. Although Sullivan initially told his roommate the story fabricated by Stephanski and Puff, he soon recanted the false version and told the police about sexual assault perpetrated by Stephanski, Puff and Giuliano. Giuliano, in fact, happened to be a good friend of Sullivan's. T.671-72. When he was interviewed by the police, Giuliano confessed to having raped the complainant and provided details regarding Stephanski's and Puff's assault on her.

Based on this information, Stephanski was arrested and charged in connection with the sexual assault. Once he and Puff were incarcerated, they encountered DeFazio, who was in jail for having violated the terms of his probation. While in jail, both Stephanski and Puff both attempted to influence DeFazio's future trial testimony. For his part, Stephanski told DeFazio that the complainant had asked him to come inside the bedroom. T.496-97. However, this assertion was contradicted by an abundance of other testimony establishing that the complainant was unconscious from the time she was carried into the spare bedroom until the next morning. Puff asked DeFazio to tell the police that Puff had been the one who stopped the attack of the victim. According to DeFazio, however, it was he who broke up the assault. T.496.

Stephanski testified and claimed that everyone at the gathering, including Sullivan, had taken Ecstasy. Stephanski, however, was the only witness who claimed that Sullivan had

consumed the drug; everyone else testified that Sullivan had not taken any Ecstasy that night.

Stephanski's version of events exculpated himself and Puff and implicated Sullivan and Giuliano

as the rapists.

The jury returned a verdict acquitting Stephanski of the two counts of first degree rape as

a principal but convicting him of one count of first degree rape as an accomplice and three

counts of first degree sexual abuse as an accomplice. He was sentenced to concurrent

determinate sentences on all four counts, the longest of which was twenty years. Puff was

convicted of one count of first degree rape, two counts of first degree sexual abuse, and two

counts of third degree aggravated sexual abuse.

On direct appeal, the Appellate Division, Fourth Department, of New York State

Supreme Court, unanimously affirmed Stephanski's conviction on September 28, 2001. *People

v. Stephanski*, 286 A.D.2d 859, 730 N.Y.S.2d 468 (App. Div. 4th Dept. 2001). Appellate counsel

sought leave to appeal on October 31, 2001. *See* Respondent's Appendix ("Resp't App.") at 192-

94, attached to Respondent's Answer (Docket #4). Leave to appeal to the New York Court of

Appeals was denied by the presiding justice of the Appellate Division who certified that there

was no question of law for review. Resp't App. H at 196. Stephanski, acting *pro se*, filed a

"Motion to Reargue and Renew Pursuant to C.P.L.R. § 2221." *See* Resp't App. I at 197-210. The

People opposed the motion, noting that Stephanski's motion should be deemed a motion to

reargue and furthermore was untimely. *See* Resp't App. J at 211. The presiding justice of the

Appellate Division denied the motion for reargument/renewal on April 29, 2002. *See* Resp't

App. L at 213. Stephanski appealed the denial of this application to the Court of Appeals, which

held that the order sought to be appealed was not appealable under C.P.L. § 450.90(1). Petitioner

did not file any collateral motions for relief in state court until 2004, when he submitted an

application for a writ of error *coram nobis* on the basis that appellate counsel was ineffective.

The Appellate Division summarily denied the relief requested on June 14, 2004. *People v.*

*Stephanski*, 8 A.D.3d 1133, 778 N.Y.S.2d 737 (App. Div. 4th Dept. 2004).  The Court of Appeals

denied leave to appeal on September 23, 2004. *People v. Stephanski*, 3 N.Y.3d 712, 818 N.E.2d

682, 785 N.Y.S.2d 40 (N.Y. 2004).

### B.     Analysis of Claims Presented in the Second Amended Petition

#### 1.     Dismissal of claims not cognizable on habeas review

##### a.     Claim Two: Denial of *Payton* Hearing

In his second ground for relief, Stephanski contends that the police violated his Fourth

Amendment rights when they entered the home of Darlene Hungerford ("Hungerford") without a

warrant and arrested him. He relies on *Payton v. New York*, 445 U.S. 573 (1980), in which the

Supreme Court held that the Fourth Amendment prohibits police from making a warrantless non-

consensual entry into a suspect's home in order to make a routine felony arrest in the absence of

exigent circumstances. Here, the trial court denied Stephanski's request for a *Payton* hearing,

holding that Stephanski lacked standing to challenge the seizure based on *Payton* grounds. The

trial court found that apart from Stephanski's conclusory statement that he had been invited to

spend the night at Hungerford's apartment, there was no basis to support the assertion that he

had any expectation of privacy there. To the contrary, Hungerford had given the police

permission to enter her home.

Federal habeas review of Fourth Amendment claims is governed by the Supreme Court's

decision in *Stone v. Powell*, 428 U.S. 465 (1976), in which the court stated: "[W]here the State

has provided an opportunity for full and fair litigation of the Fourth Amendment claim, the

Constitution does not require that a state prisoner be granted federal habeas corpus relief on the

ground that evidence obtained in an unconstitutional search or seizure was introduced at his

trial." *Id.* at 481-82.  Fourth Amendment claims in habeas petitions are reviewable only if (1) the

state has provided no corrective procedures at all to redress the alleged Fourth Amendment

violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded

from using that mechanism because of an unconscionable breakdown in the underlying process.

*Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *Gates v. Henderson*, 568 F.2d 830, 840 (2d

Cir. 1977), *cert. denied*, 434 U.S. 1038 (1978). Here, Stephanski took advantage of New York's

corrective process and was afforded a pre-trial suppression hearing. The fact that the outcome

was not to his liking does not mean that there was an "unconscionable breakdown" in the process

in this case. *See Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y.) ("In short an

unconscionable breakdown in the state's process must be one that calls into serious question

whether a conviction is obtained pursuant to those fundamental notions of due process that are at

the heart of a civilized society."), *aff'd*, 852 F.2d 59, 60 (2d Cir. 1988) (*per curiam*).

Accordingly, Stephanski's *Payton* claim is not cognizable on habeas review.

### b.      Claim Six: Harsh and Excessive Sentence

Turning to Stephanski's claim that his sentence was harsh and excessive, I note that a

petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not

a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102,

1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state

judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v.*

*Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

Here, Stephanski was adjudicated as a second felony offender and sentenced to a twenty-year determinate sentence on the first degree rape count, a class B felony (N.Y. Penal Law §§ 130.35(2), 20.00); and concurrent sentences of seven years on each of the first degree sexual abuse counts, class D felonies (N.Y. Penal Law §§ 130.65(2), 20.00). All sentences were set to run concurrently. Because Stephanski was adjudicated as a second felony offender and convicted of violent felony offenses, *see* N.Y. Penal Law § 70.02(1)(a), (c), the court was obligated to impose a determinate sentence of not less than eight years and not more than twenty-five years. N.Y. Penal Law § 70.06(6)(a). Stephanski's aggregate sentence of twenty years falls well within the sentencing parameters for these crimes. Stephanski makes no assertion that his sentence was not within the applicable statutory range; he claims only that it was unduly harsh and excessive. Consequently, it is not reviewable by this Court in a habeas proceeding.

## 2.   Dismissal of Procedurally Defaulted Claims

Respondent contends that Stephanski's third, fourth and fifth substantive claims are all procedurally defaulted for one or more reasons. *See* Respondent's Memorandum of Law (Docket #65). The Court agrees with respondent, as discussed below.

### a.   Claim Three: Erroneous Jury Charge Regarding Accomplice Liability

On direct appeal, the Appellate Division found unpreserved for review Stephanski's contention that the court's charge to the jury with respect to accomplice liability lessened the prosecution's burden of proof. *People v. Stephanski*, 286 A.D.2d at 860 (citing N.Y. Crim. Proc. Law § 470.05(2) ("For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial . . . is presented when a protest thereto was registered. . . at the time of such ruling. . . ."). As respondent correctly notes, the state court's reliance on a state procedural bar rule as a basis for dismissing the claim constitutes an adequate and independent state ground which precludes federal habeas review unless Stephanski can show cause for the default and prejudice resulting therefrom, or that a miscarriage of justice will occur should this Court fail to consider the claim.

New York's contemporaneous objection rule requires that in order to preserve an issue for appellate review in the New York state courts, the defendant must object to the alleged error at trial, at such time when the trial court has an opportunity to repair the defect. *See* N.Y. Crim. Proc. Law § 470.05(2). The New York Court of Appeals has consistently held that a failure to object to a jury charge at a time when the trial court had an opportunity to effectively correct its instructions does not preserve any question of law for review. *People v. Patterson*, 39 N.Y.2d 288, 383 N.Y.S.2d 573 (N.Y. 1976) (citing N.Y. Crim. Proc. Law § 470.05(2)). The court in *Patterson* explained that "[s]trict adherence to the requirement that complaint be made in time to permit a correction serves a legitimate State purpose." *Id.* (citing *Henry v. Mississippi*, 379 U.S. 443, 447 (1965)).

Where, as here, "'the state court explicitly invokes a state procedural bar rule as a separate basis for decision,'" federal habeas review is precluded unless the petitioner can show

cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will occur if the federal court does not consider the defaulted claim. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (quoting *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989)). In the present case, the state court's reliance on the contemporaneous objection rule in denying the jury instruction claim constitutes an adequate and independent basis so as to preclude federal habeas review of this claim *See Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citations omitted).

Stephanski has failed to show cause or prejudice, and he has not adduced new evidence tending to show that he is actually innocent of the charges against him. On this record, there is no basis for overlooking the clear procedural default. Accordingly, federal habeas review of the jury instruction claim is precluded.

>   **b.     Claim Four: Insufficiency of the Evidence/Verdict Was Against the Weight of the Evidence**
>
>   **Claim Five: Denial of Severance**

Respondent contends that Stephanski's fourth and fifth claims are unexhausted because they were not presented to the highest appellate court in New York before being raised here on habeas review. *See* Respondent's Memorandum of Law (Docket #65); *Picard v. Connor*, 404 U.S. 270, 276-77 (1971). As respondent points out, Stephanski's leave application to the New York Court of Appeals raised only one claim– that his statement to the police was improperly admitted at trial for impeachment purposes, in violation of his Sixth Amendment rights. Appellate counsel's statement that "leave should be granted on the basis of the question of law presented above, as well as on the basis of all other issues over which the Court of Appeals may

have jurisdiction" is plainly insufficient to exhaust these claims for purposes of federal habeas review. *See Grey v. Hoke*, 933 F.2d 117, 199 (2d Cir. 1991); *Jordan v. LeFevre*, 206 F.3d 196 (2d Cir. 2000). Nor were the claims exhausted by Stephanski's subsequent motion to reargue the denial of his leave application. That motion was procedurally improper, since an order denying permission to reargue is not appealable in New York. *E.g.*, *Cohen Swados Wright Hanifin Bradford & Brett, LLP v. Frank R. Bayger, P.C.*, 269 A.D.2d 739, 703 N.Y.S.2d 319 (App. Div. 4th Dept. 2000) (citing *Empire Ins. Co. v. Food City, Inc.*, 167 A.D.2d 983, 562 N.Y.S.2d 5 (App. Div. 4th Dept. 1990) ("An order denying a motion to reargue is not appealable[.]") (citing Siegel, Practice Commentaries, N.Y. C.P.L.R. § 2221:9, at 185; *Fahey v. County of Nassau*, 111 A.D.2d 214, 489 N.Y.S.2d 249 (App. Div. 2d Dept. 1985)). Thus, as respondent argues, the motion to reargue did not fairly present these issues for review by the Court of Appeals, as required by the exhaustion doctrine. *See Ramirez v. Attorney Gen'l of the State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001).

This Court must deem these claims exhausted, however, because Stephanski has no corrective process available to him in state court. He has already utilized the one direct appeal to which he is entitled. *See* N.Y. Court Rule 500.10(a). A collateral motion pursuant to C.P.L. § 440.10 would be futile because the motion court is statutorily mandated to deny these claims on the basis of C.P.L. § 440.10(2)(c) because they were evident on the record and could have been raised on direct appeal. Thus, even though the claims are deemed exhausted, they are procedurally defaulted. Because Stephanski can show neither cause nor prejudice, nor that a fundamental miscarriage of justice will occur should the Court decline to entertain these claim, they are procedurally barred from habeas review. *See*, *e.g.*, *Coleman v. Thompson*, 501 U.S. 722,

728-31 (1977).[5]

### 3.    Merits of the Remaining Claims

### a.    Claim One: Improper Admission of Statement

Stephanski contends that it was improper for the prosecution to cross-examine him using his statement to the police as impeachment material. He argues that the statement was involuntarily obtained because the police continued to question him after he requested a lawyer.

At the suppression hearing, evidence was presented that upon being taken into custody, Stephanski was administered the *Miranda* warnings by Investigator Kim Hinkley ("Hinkley"). H.5-6.[6] Stephanski stated that he understood them and asserted, "I plead my fifth. I want my lawyer." H.7. Immediately thereafter, however, Stephanski began to make denials concerning his involvement in the sexual assault on Dickenson. Stephanski said that he did not do anything to her and that he had not driven up to Canton, New York, with Puff, in order to evade the police. Furthermore, Stephanski blamed the victim, characterizing her as a "flirtatious slut" who had been "coming on" to everybody. H.21; T.959. Hinkley answered questions posed to her by Stephanski but also asked Stephanski questions which continued their conversation about the sexual assault. Stephanski then gave a five-page written statement which was, for the most part, self-serving and exculpatory. H.8-10. At the time, Stephanski was coherent and did not appear to be under the influence of drugs or alcohol. In addition, he had completed eleventh grade and had his G.E.D.

---

[5]  Stephanski's third claim, that the jury instruction improperly lessened the prosecution's burden of proof, was not raised before the New York Court of Appeals, and also is procedurally defaulted for the same reason that the fourth and fifth claims are procedurally defaulted.

[6]  Citations to "H.___" refer to the transcript of the suppression hearing.

The suppression court found that even though Stephanski's statement was taken in violation of his Sixth Amendment right to counsel, it was not the product of promises, threats, or coercion. Therefore, it was not admissible during the state's direct case but could be used as impeachment material should Stephanski testify at trial. On direct appeal, the Fourth Department held that the suppression court properly determined that the statement was voluntarily made and therefore admissible for impeachment purposes. *People v. Stephanski*, 286 A.D.2d at 860 (citations omitted).

Once the Sixth Amendment right to counsel attaches at the initiation of adversary judicial proceedings, any statements elicited by the state outside the presence of a defendant's counsel that are not accompanied by a waiver of this right are inadmissible in the state's case-in-chief. *See United States v. Gouveia*, 467 U.S. 180, 187-88 (1984); *United States v. Henry*, 447 U.S. 264, 273-74 (1980). The Supreme Court subsequently adopted the prophylactic rule that once a defendant invokes his Sixth Amendment right to counsel during a government-initiated interrogation, any subsequent waiver of that right is presumed invalid, even if the waiver is knowing and voluntary. *Michigan v. Jackson*, 475 U.S. 625, 629-32, 636 (1986) (holding that statements elicited in violation of this prophylactic rule are inadmissible in the government's case-in-chief). *Michigan v. Harvey*, 494 U.S. 344 (1990), provided an opportunity for the Supreme Court to revisit this issue. In that case, the court held that a statement obtained in violation of *Jackson* may be used by the prosecution to impeach a defendant on cross-examination if the defendant, in fact, knowingly and voluntarily waived his Sixth Amendment right to counsel. *Id.* at 350-51. Thus, *Harvey* limited *Jackson* by holding that a statement obtained during police initiated questioning after a request for counsel still may be admissible to

impeach a defendant on cross-examination if given after a knowing and voluntary waiver of his right to counsel, even though it may violate the prophylactic rules concerning the Sixth Amendment. *United States v. Abdi*, 142 F.3d 566, 569 (2d Cir. 1998) (citing *United States v. Spencer*, 955 F.2d 814, 818 (2d Cir. 1992)). *Edwards v. Arizona* is instructive on what constitutes a knowing and voluntary waiver of the right to counsel:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*

451 U.S. 477, 484-85 (1981) (footnote omitted) (emphasis supplied).

In this case, after asking for an attorney, Stephanski initiated further conversation with Investigator Hinkley, effectively bringing himself squarely within the ambit of *Edwards*. See 451 U.S. at 484-85. Thus, the Court has no difficulty concluding that the state courts correctly held that petitioner's statement was voluntarily made and admissible for impeachment purposes. *See Harvey*, 494 U.S. at 350-51; *Edwards*, 451 U.S. at 484-85. Habeas relief therefore is not warranted.

### b. Ineffective Assistance of Appellate Counsel Based on Claims Three, Four, Five, and Six

Stephanski has "piggy-backed" ineffective assistance of appellate counsel claims onto the substantive, underlying claims presented in grounds three (erroneous jury charge), four (evidentiary insufficiency), five (denial of severance), and six (harsh and excessive sentence). The claims underlying grounds three through five were found to be unpreserved on direct appeal

by the Appellate Division; ground six was found to be without merit. Stephanski contends that appellate counsel was ineffective in failing to seek leave to appeal them from the New York Court of Appeals.

In criminal matters in New York state, the Court of Appeals retains discretionary authority to grant leave to appeal; there is no appeal as of right to that court. *See* N.Y. Const. art. VI, § 3(b); N.Y. Crim. Proc. Law §§ 450.90, 460.20. The Supreme Court has held that there is no constitutional right to counsel to pursue discretionary appeals. *E.g.*, *Ross v. Moffitt*, 417 U.S. 600, 619 (1974) ("Our reading of the Fourteenth Amendment leaves these choices to the State, and respondent was denied no rights secured by the Federal Constitution when North Carolina refused to provide counsel to aid him in obtaining discretionary appellate review."). Where no constitutional right to appellate counsel exists, a defendant cannot be deprived of the effective assistance of that counsel. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely.") (citing *Ross v. Moffitt*, 417 U.S. at 619). Thus, an attorney's failure to file an application for leave for discretionary appeal or to include every permissible claim in such an application does not give rise to a Sixth Amendment ineffective assistance claim. *See id.* (holding that failure to timely file for writ of *certiorari* to Florida's highest court did not amount to ineffective assistance of appellate counsel where respondent was not entitled as of right to counsel on discretionary appeal); *accord*, *e.g.*, *Stewart v. Hanslmaier*, No. 95 Civ. 0790(CPS), 1996 WL 449285, at *3 (E.D.N.Y. July 29, 1996) (denying ineffective assistance claim where appellate counsel chose not to advance each claim raised on direct appeal in seeking leave before the New York Court of

Appeals); *Motti v. Coombe*, No. 84 Civ. 3580(MJL), 1986 WL 3791, at *2 (S.D.N.Y. Mar. 27,

1986) (holding that failure to apply for leave to New York Court of Appeals does not constitute

ineffective assistance of appellate counsel). Moreover, given that the jury charge claim was held

to be unpreserved by the intermediate appellate court, the Court of Appeals had no authority to

review it. *See Feinberg v. Saks & Co.*, 56 N.Y.2d 206, 210-11 (1982) ("This court has no power

to review either the unpreserved error or the Appellate Division's exercise of discretion in

reaching that issue.").

Clearly established Supreme Court precedent states that Stephanski had no constitutional

right to counsel to seek leave for discretionary appeal to the Court of Appeals. Accordingly,

Stephanski's claims of ineffective assistance of appellate counsel premised on counsel's failure

to raise certain substantive issues in the leave application fails on the merits.

### c.   Claim Seven: Ineffective Assistance of Appellate Counsel - Failure to "Raise *Molineux* Ruling"

Stephanski contends that appellate counsel was ineffective "for not raising *Molineux*

ruling on direct appeal [before the intermediate appellate court] inwith [*sic*] regards to narcotics

seized which was a very critical issue as it prejudiced petitioner from calling co-defendant as a

witness[.]" Second Amended Petition at 2 (Docket #52). Respondent notes that although this is

labeled a *Molineux*[7] claim, it apparently is based on an alleged violation of the prosecutor's

discovery obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), to turn over certain lab

reports. Respondent's Memorandum of Law at 17 (Docket #65). This claim is without merit

---

[7] *People v. Molineux*, 168 N.Y. 264, 291, 61 N.E. 286 (1901) (generally precluding evidence of uncharged crimes as overly prejudicial; such evidence can be received, however, if it helps to establish some element of the crime under consideration or is relevant because of some recognized exception to the general rule).

because Stephanski concedes that the reports at issue were turned over to defense counsel. *See id.* Appellate counsel cannot be found deficient for declining to raise a non-meritorious claim on appeal.

> **d.      Claim Eight:  Ineffective Assistance of Appellate Counsel - Failure to Argue Prosecutorial Misconduct**

Ground eight in Stephanski's Second Amended Petition (Docket #52) states that "appellate counsel was ineffective for not raising prosecutorial misconduct on direct appeal[.]" *See* Second Amended Petition at 3 (Docket #52). However, in the Second Amended Petition, Stephanski does not provide any further details about the bases for this claim, and he does not indicate which aspects of the prosecutor's performance were prejudicial. The Court has turned to the Second Amended Memorandum of Law (Docket #72), for guidance as to what constituted the alleged misconduct. There, Stephanski identified several instances in which the prosecutor used a variant of the pronoun "I" in summation. For instance, when discussing the credibility of witness Giuliano, who pled guilty to the rape and testified against Stephanski and Puff, the prosecutor stated, "I submit to you, he told you the truth." Second Amended Memorandum of Law at 21 (Docket #72) (citing, *e.g.*, T.1066).  Stephanski complains that the prosecutor thereby improperly vouched for the credibility of prosecution witnesses and denigrated Stephanski's credibility.  He contends that appellate counsel was ineffective in failing to raise this claim of prosecutorial misconduct on direct appeal.

 The two-pronged standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies equally to claims of ineffective assistance of appellate counsel. *E.g.*, *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992) (holding that in order to prevail on an ineffective assistance of appellate counsel claim, appellant must show first that his counsel's performance was deficient

and second that the deficiency caused actual prejudice to his defense), *cert. denied*, 508 U.S. 912 (1993). In attempting to establish that appellate counsel's failure to raise a claim on appeal constitutes deficient performance, it is insufficient for the petitioner to show "merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). Whether the neglected appellate issue is based on federal or state law, the burden rests on petitioner to show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* In assessing appellate counsel's performance, the Court must judge the conduct at issue on the basis of the facts of the particular case, viewed as of the time that counsel was preparing the appeal. *Strickland*, 466 U.S. at 690.

The Second Circuit had cautioned against the excessive use of the personal pronoun "I" by prosecutors, particularly insofar as it makes an issue of the prosecutor's credibility or implies the existence of proof outside the record. However, the Second Circuit has found it acceptable when a prosecutor uses the phrases "I submit that" and "I think" when asking a jury to draw inferences based on common sense. *United States v. Eltayib*, 88 F.3d 157, 173 (2d Cir. 1996) ("[T]he phrase 'I submit' expresses not a personal belief but a contention, an argument, which, after all, is what a summation to the jury is meant to be. The well-advised prosecutor will sidestep all uses of the pronoun "I," but we conclude that the phrase "I submit" is not improper in these circumstances [prosecutor prefaced his argument that a witness's testimony was reliable and credible with the phrase 'I submit that'].")); *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995). Morever,  even though phrases such as "I think it is clear," or "Does it makes sense–I think it does," are "not 'acceptable,' they do not merit reversal unless 'the summation viewed as

a whole . . . reflect [s] improper vouching.'" *Eltayib*, 88 F.3d at 173 (quoting *United States v. Modica*, 663 F.2d 1173, 1177, 1178 (2d Cir. 1981)).  In *United States v. Rivera*, the Second Circuit condoned the prosecutor's use of the phrase "I submit to you that," in light of the defense counsel's accusations during its summation that the testimony of the government's informant was fabricated. 22 F.3d 430, 438 (2d Cir. 1994) ("[T]he government is allowed to respond to argument that impugns its integrity or the integrity of its case.").

Based on these precedents, the Court finds that the prosecutor's limited use in this case of the phrase "I submit that" was not improper. Defense counsel for Stephanski clearly made an issue of credibility and argued that the prosecution's witnesses should not be believed. *See* T.1000 ("[W]hat we have here is really a credibility case."); T.1002 ("And so credibility will be a key issue here."); T.1016 ("But I suggest to you that she [the complainant] had quite a selective memory on what happened that night."); T.1019 ("[T]he prosecution is asking you to convict this man of these very serious charges based upon the testimony of two people [Sullivan and Giuliano], mentally slow and intoxicated at the time."); T.1026 ("And all of his [Giuliano's] testimony, it is so diverse I don't know how you can accept it."). Defense counsel strongly suggested that Giuliano's testimony was all fabricated so that he could gain the benefit of a reduced sentence. T.1029-30 ("He's trying to earn his five years. Because he doesn't get the five years until he performs.").

For his part, the prosecutor instructed the jury, "You determine credibility. You judge that folks, that's why you're here." T.1063. When the prosecutor urged the jury to find that Sullivan was telling the truth about what he observed Stephanski and Puff doing to Dickenson, he argued that Sullivan's story was corroborated by other evidence, such as Giuliano's

confession and guilty plea. This was not improper since the prosecutor's statements that followed the "I submit that" phrase relied on evidence in the case to corroborate Sullivan's testimony. *See Eltayib*, 88 F.3d at 173. With regard to Giuliano, the prosecutor argued that his testimony should not be dismissed just because he had suffered a brain injury prior to the incidents at issue; he pointed out that Giuliano was competent to be charged with the crime and suggested that the credibility of his trial testimony was reinforced by the fact the had pled guilty to the acts he described. Again, this was not improper vouching. *See id.*

The Court has reviewed the prosecutor's summation and finds it significant that neither Stephanski's defense counsel nor counsel for co-defendant Puff ever objected to any of the remarks challenged by Stephanski here. Indeed, the prosecutor conducted himself with professional civility throughout his summation. The prosecutor did not inject his personal beliefs or opinions into his argument, or suggest that unrevealed information in the state's investigative files established the witness's veracity. There were no instances of misconduct that this Court could discern, let alone the type of egregious, highly prejudicial remarks that would have jeopardized Stephanski's due process right to a fair trial.

Given the fact that the arguments Stephanski identifies as omitted on appeal are without merit, he is unable to prove prejudice since omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant. *See Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful . . . .'" (alteration in original) (quoting *Claudio v. Scully*, 982 F.2d at 803); *see also Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[T]he failure to raise nonmeritorious issues does not constitute

ineffective assistance."). Because Stephanski cannot prove prejudice, it is unnecessary to address whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one."). Accordingly, this claim does not warrant federal habeas relief.

> **e.     Claims Nine, Ten and Eleven: Ineffective Assistance of Appellate Counsel on Unspecified Grounds**

Ground nine of the Second Amended Petition alleges that appellate counsel was ineffective "for not raising ineffective assistance of trial counsel[.]" There are no details provided as to the factual or legal bases for this claim, however. Ground ten of the Second Amended Petition states that appellate counsel was ineffective "for not raising cumulative effect on direct appeal[.]" Again, there are no details provided as to the factual or legal bases for this claim, and the Court is unable to decipher what Stephanski means by "cumulative effect." Finally, ground eleven asserts that "appellate counsel was ineffective as guaranteed by the U.S.C. Sixth and Fourteenth Amnds [*sic*], and N.Y.S.C. Art One Secs Six [*sic*]." Once again, that is the extent of Stephanski's allegations regarding the claim. These claims appear to do nothing but rehash his other complaints about trial counsel's and appellate counsel's performance. Moreover, they are entirely too vague to begin to state a colorable claim for relief. They therefore must be dismissed.

## IV.     Conclusion

For the reasons stated above, petitioner Paul Stephanski's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is dismissed. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of

appealability. *See* 28 U.S.C. § 2253. I further certify that pursuant to 28 U .S.C. § 1915(a)(3),

any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for

purpose of an appeal.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      May 18, 2006
            Buffalo, New York.